## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SERVICE EMPLOYEES INTERNATIONAL UNION          C.A. No.
HEALTHCARE PENNSYLVANIA,
                                    Plaintiff,

                    vs.

HERITAGE VALLEY HEALTH SYSTEM,
                                    Defendant.

### COMPLAINT TO COMPEL ARBITRATION

### INTRODUCTION

1.     This action is brought pursuant to Section 301 of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 185, by Plaintiff Service Employees International Union

Healthcare Pennsylvania ("Union") to compel Defendant Heritage Valley Health System

("Employer" or "HVHS") to arbitrate a grievance dispute as required by the parties' collective

bargaining agreement's mandatory grievance and arbitration procedure.

2.     The Union represents a unit of registered nurses who are employed by HVHS in

Beaver, Pennsylvania. The Union is a labor organization within the meaning of 29 U.S.C. §§

152(5) and 185(b) with its central offices at 1600 North Second Street, Harrisburg, Pennsylvania.

17102. It represents employees throughout Pennsylvania in an industry affecting commerce

within the meaning of 29 U.S.C. § 152(6) and (7) and 29 U.S.C. § 185(b).

3.     HVHS is a Pennsylvania nonprofit corporation with its headquarters at a hospital

facility located at 1000 Dutch Ridge Road, Beaver, Pennsylvania, which it owns and operates.

HVHS is an "employer" within the meaning of 29 U.S.C. § 152(2) and is engaged in commerce

and in an industry affecting commerce within the meaning of 29 U.S.C. § 152(6) and (7) and 29

U.S.C. § 18 (b).

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331.

5.     Venue lies within the Western District of Pennsylvania under 28 U.S.C. § 1391 as both parties transact business within this judicial district and the events underlying this complaint occurred within this judicial district.

## FACTUAL ALLEGATIONS

6.     At all times relevant herein, the Union and HVHS were parties to a written collective bargaining agreement effective from July 1, 2016- June 30, 2019 (the "CBA"). A copy of the CBA is attached as Exhibit A.

7.     As shown from the CBA provisions quoted below, the CBA requires HVHS to maintain certain staffing levels in each unit of the Hospital. These are nurse to patient ratios which were collectively bargained between the parties.

8.     The ratios establish that nurses cannot be assigned greater than a certain number of patients, unless certain exigent circumstances are present. The CBA provides:

## ARTICLE 10

## QUALITY PATIENT CARE/STAFFIN'RETENTION AND RECUITMENT

10.2    RN Pool: Heritage Valley, Beaver and the Union agree to discuss the enhancement and enlargement of the RN Pool in order to help ensure adequate staffing on all shifts and units. RN Pool nurses shall not have a permanent unit or work area assignment and the RN Pool positions shall be filled through volunteers or through posted positions in accordance with Article 21. Heritage Valley, Beaver and the Union agree to discuss the Pilot Weekend Casual Pool program, which may be continued upon mutual agreement of the parties.

10.5    Voluntary Floating/Pulling/Use of Agency Nurses: The parties agree that it is in the interest of patient care that all staff assigned to a particular unit or work area shall be properly trained, oriented, and familiar with the policies and procedures of that unit or work area. To this end, the following guidelines shall apply:

(a) Heritage Valley, Beaver shall not provide regular ongoing staffing on any area through the  use of Agency personnel, temporary or contract nurses, or floating/pulling of employees. In the event that such potential problem areas are identified, they shall be referred to the Professional Practice Committee for a recommended solution, and any dispute shall not be subject to the grievance and arbitration procedure in Article 7.

See also, Exhibit A to Complaint Appendix A.

9.      The CBA also contains an alternate dispute resolution procedure wherein a

grievance is subject to a multi-step process culminating in final and binding arbitration before an

Arbitrator. The relevant portions of Article 7 provides as follows on this point:

## ARTICLE 7

## GRIEVANCE PROCEDURE

7.1      A grievance shall be defined as any dispute or complaint arising between the parties hereto, under or out of this Agreement or the interpretation, application, or any alleged breach thereof, and shall be processed and disposed of in the following manner:

................

**STEP THREE**: If the grievance is not settled in Step Two, the grievance may, within ten (10) days after the answer in STEP TWO, be presented in STEP THREE. A grievance shall be presented in this Step to Heritage Valley, Beaver's Human Resources Department. Unless mutually agree otherwise, the parties agree to meet in an effort to resolve the grievance within ten (10) days after receipt of the grievance. Heritage Valle, Beaver shall render a decision in writing within fifteen (15) days after such meeting.

A grievance concerning a discharge or suspension may be presented at Step Three in the first instance within fifteen (15) working days after notification by Heritage Valley, Beaver of such discharge or suspension.

7.2      A grievance which has not been resolved, may, within ten (10) days after completion of Step Three, be referred to arbitration by the Union by notifying Heritage Valley, Beaver in writing of its wish to appeal the grievance to arbitration. The parties shall immediately jointly request the Federal Mediation and Conciliation Service to submit the names of nine (9) qualified arbitrators, and the parties will make the selection from that list by alternately removing names until one name remains.
.....................

7.4     The award of an arbitrator hereunder shall be final, conclusive and binding upon Heritage Valley, Beaver, the Union and the employees……

7.7     A grievance which affects a class of employees which Heritage Valley, Beaver representatives designated in Steps One and Two lacks authority to settle, may initially be presented at Step Three by the Union.

10.     On October 18, 2018, Arbitrator Richard Dissen issued a Decision and Award in which he upheld a grievance in the Union's favor. That Award is attached hereto as Exhibit B. The Award sustained the Union's grievance holding that HVHS had violated the parties' CBA by flexing down (sending home) bargaining unit members who were at the time receiving premium time pay, while retaining non bargaining unit nurses (agency nurses) to continue working when the Hospital found it had a need for reduced staff.

11.     Within days after that Award, HVHB adopted a new practice, in which it required bargaining unit members, who are registered nurses, to leave their usual unit to go to another unit and work as a patient care assistant ("PCA").

12.     In the parlance of the facility, these nurses were "pulled" to another unit.

13.     PCAs are not nurses- of any licensure- and their job responsibilities are significantly less skilled than the bargaining unit members.

14.     PCAs are not subject to patient ratios.

15.     HVHS does not allow PCAs to perform any real patient care duties. They are typically assigned to "assist" between at least three to five\ registered nurses,   on a unit, depending upon the unit's needs.

16.     Once working on the new unit, the bargaining unit nurses are required to care for numbers of patients in excess of the  contractually agreed upon ratios

17.     Even when assigned to work in a PCA capacity, registered nurses are required to render care in accordance with their state issued licenses.

18.     Registered nurses assigned to work in the capacity of PCAs must also perform usual registered nurse duties in order to assure that their patients receive proper care.

19.     On October 28, 2018, the Union filed a class action grievance at Step 3 of the grievance procedure as provided for in Article 7 asserting that HVHS had breached the CBA by (1) requiring registered nurses to work in the capacity of PCAs; (2) not honoring the CBA-mandated ratios; and (3) retaliating against the Union for having prevailed in the grievance which resulted in the Dissen Award. The October 28, 2018 grievance is attached hereto as Exhibit C.

20.     HVHS has refused to process this grievance through the grievance step procedure. HVHS claims that because the grievance involved nurses being "pulled" from one unit to another, Article 10.4 of the CBA precludes resort to the grievance procedures. The parties' email exchange is attached hereto as Exhibit D.

21.     This grievance raises several contractual disputes including, *inter alia*, maintenance of ratios, ability to assign registered nurses to work as PCAs, retaliation for prevailing in the Dissen Award; all of these issues are subject to the grievance and arbitration provisions of the CBA.

22.     The CBA prohibits discrimination which is in violation of the National Labor Relations Act.. Article 18 of the CBA provides:

**ARTICLE 18**
**NONDISCRIMINATION**

18.1    Neither Heritage Valley, Beaver nor the Union shall discriminate against any employee because of ….., nor shall Heritage Valley, Beaver or the Union discriminate against any employee in violation of rights provided in the National Labor Relations Act.

23.     Since October 2018, and continuing to date, 2018HVHS has required bargaining unit registered nurses to leave their assigned units and work in the capacity of PCAs, during which time they are required to care for significantly more patients than allowed by the mandatory CBA ratios.

24.     The Union has continued to file grievances challenging the Hospital's described CBA violation. Those grievances, filed to date, are attached hereto, collectively, as Exhibits E and F.

25.     HVHS continues to refuse to process any and all of these grievances invoking the same rationale for their refusal.

## CLAIM FOR RELIEF

(Refusal to arbitrate Grievance dispute as required by the Collective Bargaining Agreement, 29 U.S.C. § 185)

26.     The Union realleges paragraphs 1 through 26 above.

27.     HVHS has breached the CBA by its refusal to process the described grievances through the step procedure as it is contractually required to do. CBA Article 10.5 precludes HVHS's reliance on Article 7. Article 10.5(a) narrowly limits those disputes which are precluded from the scope of Article 7 and these disputes do not fall under that limited precluded category.

28.     Whether the Union's interpretation of the scope of Article 7 is correct or HVHS's is correct here can only be resolved through the dispute resolution procedure including arbitration, a procedure to which HVHS is contractually bound.

## PRAYER FOR RELIEF

30. Assume jurisdiction of this case.

31. Order HVHs to cooperate with the Union with the processing of all of these grievances including, if necessary, arbitration pursuant to Article 7 of the CBA.

32. Award the Union reasonable attorney's fees, all expenses and costs incurred in bringing this action; and

33. Such further and other relief as may be just and proper.


Respectfully Submitted,

____/s/ Claudia Davidson_____
OFFICES OF CLAUDIA DAVIDSON
PA. ID. No. 36020
429 Fourth Avenue
Pittsburgh Pa   15219
412 391 7709 T
Claudia.davidson@pghlaborlawyers.com


_____/s/Pamina Ewing_____
FEINSTEIN DOYLE PAYNE & KRAVEC
Pa. I. D. No. 59244
Law and Finance Building Suite 1300
429 Fourth Avenue
Pittsburgh Pa  15219
412 281 4800 T
pewing@fdpklaw.com


Attorneys for SEIU Healthcare Pennsylvania


April 8, 2019